4513. SOUTHERN BELL TELEPHONE & TELEGRAPH
CO. v. SHAMOS, by next friend.

1. An employee was engaged in clipping cables for a telephone company, and, in so doing, was seated in a swing attached by means of hooks and straps to a telephone wire. In order to move along the wire, the usual and ordinary way was to catch hold of the cable with his hands, lift his weight from the seat, and slide the swing along the wire. Suspended to the poles below the swing was a wire of an electric-light company, carrying a highly charged current of electricity. The employee knew of the presence of this wire, knew it was charged with electricity, and knew, or could, by the exercise of ordinary care, have

known, that the insulation had worn off, and that if he came in contact with the wire he would be injured. He clipped cables in the manner above indicated, for more than a day, but, as he moved along, the distance between the cable and the electric-light wire became gradually shortened, so much so that when the employee endeavored to slide the swing along in the usual way, his foot was extended and touched the wire of the electric-light company, and he was injured. It was no part of the employee's duty to inspect the wires. *Held:* In a suit against the telephone company, to recover for the injuries thus sustained, it was a question for the jury whether the employee was lacking in ordinary care in failing to discover that the distance between the cable and the wire had gradually become so shortened as to make unsafe the place at which he had been set to work by the master. This is especially true where the master assured the servant when he went to work that the place was safe.

2. The verdict was not legally excessive.

3. Every material averment of a petition must be either admitted or denied, unless the defendant is unable, from want of information, to do either. A mere statement in an answer to a paragraph of a petition, that the defendant "neither admits nor denies" such paragraph, without giving the reason for failing so to do, is no answer, and must be treated as an admission.

4. In the absence of a request for a more specific instruction, the following charge was not erroneous because the trial judge failed to instruct the jury specifically to take into account the possibility of the plaintiff's earning capacity being increased: "If, under the evidence, the expectancy would be more or less than that of the average man, or the earning capacity could increase or decrease, the cash or present value would vary accordingly."

5. In the trial of an action for personal injuries sustained as a result of an unsafe place in which an injured servant was put to work, it was not error to charge: "The master, under the law, is under the special duty to inspect and investigate the risks to which the servant is exposed."

6. While the interest of a witness may always be considered, the mere failure of the judge to enumerate the fact of such interest, as one of the things which may be considered by the jury in passing upon the credibility of the witnesses, will not ordinarily demand a new trial.

7. The following charge was not so prejudicial as to require a new trial: "You are not concerned in any way with the result of your verdict, so long as you know and believe, as upright jurors, that verdict speaks the truth of the case, based upon the opinion you entertain of the evidence adduced upon the trial, under the rules of law as given you in charge by the court."

DECIDED FEBRUARY 4, 1913. REHEARING FEBRUARY 22, 1913. ADHERED TO MARCH 1, 1913.

Action for damages; from city court of Macon—Judge Hodges. October 29, 1912.

*Hardeman, Jones, Park & Johnston,* for plaintiff in error.
*Napier & Maynard,* contra.

POTTLE, J. The plaintiff, an employee of the defendant, was directed by its general manager to "clip cables" at a point on the company's telephone line in the city of Macon. His work was that of a regular lineman, but he was an employee of inferior grade to a lineman, and receiving less pay. In order to perform the work it was necessary for him to use a swinging device consisting of a safety belt, with two hooks on the end, which were fastened over the wire, and a board seat at the bottom of the straps, upon which the workman sat while clipping the cable. When directed to do the work, the plaintiff asked the manager for a "helper" to pull the wires down with a rope, which was the usual way of protecting a workman engaged in clipping cable. The general manager stated that he had no helper to send, that there was nothing to hurt the plaintiff, and that the work was perfectly safe. Thereupon he began the work. He slided along the telephone wire by catching hold of it, lifting his weight from the seat of the swing and pulling himself along with his hands, which was the usual and ordinary way of moving along the wire. Suspended along the poles of the telephone company, and from five to seven inches below his feet, where he was put to work, was a wire of an electric-light company. This wire carried a highly charged current of electricity, and the insulation upon the wire was badly worn, so much so that it hung down in shreds, which could be easily seen from the top of a house some distance above the wire. The plaintiff was not warned by the defendant that the wire carried such a highly charged current, but he did know that if he touched the wire he would get a shock. When he went to work for the defendant he acknowledged receipt of a written notice to inspect all poles before using them, that it was extra-hazardous to work around wires carrying a high current of electricity, and that employees, when doing such work, should use rubber gloves and rubber coats. Many employees, with the knowledge of the company, did not use rubber gloves and coats, and the defendant knew that the plaintiff did not have any. The swing which the plaintiff was using was strapped as closely to the wires as it could be gotten when used for sliding along so as to clip the cables. The plaintiff was not a lineman, and it was not his duty to inspect the wires. He had been clipping the cables, in the manner above indicated, for more than a day prior to his injury, but the farther

30

he moved along the wire toward his destination, the closer the cable got to the electric-light wire. At the time of the injury the electric-light wire was about five inches beneath his feet. He took hold of the cable with his hands and pressed his weight down on it, to allow him to slide the swing along the wire, and, in so doing, one of his feet came in contact with the electric-light wire. He was severely shocked and burned, and fell some thirty or forty feet to the pavement. He sued for damages, and the jury found a verdict in his favor for $3,500; and the defendant's motion for new trial was overruled.

1. It is contended in behalf of the defendant that it was guilty of no negligence, that the plaintiff assumed the risk of injury, and that even if the defendant was negligent, the plaintiff could, by the exercise of ordinary care, have avoided the consequences of such negligence, and that the plaintiff's injury was due to his own carelessness in unnecessarily extending his foot far enough below the swing to come in contact with the wire. The facts as set forth above are stated most favorably for the plaintiff, because they must be so considered by the reviewing court after a verdict in his favor. Unquestionably the defendant was negligent in failing to furnish him a safe place in which to work. This was one of the absolute duties of the master, and the defendant was bound to have the place inspected, to see that it was safe, and to put it in a safe condition if it was not so. *Trammell* v. *Columbus Railroad Co.*, 9 *Ga. App.* 98 (70 S. E. 892). The poles were the property of the telephone company. If it permitted another to so use these poles as to render unsafe a place wherein it set one of its servants to work, it was liable to the same extent as if it itself had, through its own act of commission or omission, put the place in an unsafe condition or allowed it to become so. Acquiescence in such negligent conduct of another is the same in law as the doing of the negligent act. One injured, however, by reason of the dangerous condition of the place in which he is put to work can not recover if he had equal means with the master of discovering the danger, or if he failed to exercise ordinary care after the danger became apparent. *Jellico* v. *White Co.*, 11 *Ga. App.* 836 (76 S. E. 599). If a servant does not know and can not, by the exercise of ordinary care, ascertain that a place is dangerous, he has the right to rely upon the assurance of the master that it is safe; but it is otherwise if the danger be

obvious to an ordinarily prudent man of the servant's capacity and experience. *Green* v. *Babcock Lumber Co.,* 130 *Ga.* 469 (60 S. E. 1062); *Cochrell* v. *Langley Mfg. Co.,* 5 *Ga. App.* 324 (63 S. E. 244). The plaintiff knew the wire was dangerous. He could see, and afterwards did see, from the top of a house above the wire, that the insulation had worn off at and near the place where he was injured. He also knew that the wire was located in dangerous proximity to the cable. If, therefore, the proximate cause of his injury was the use by him of an obviously dangerous place, he can not recover, or if he was hurt as a result of what he saw or could, by the exercise of ordinary care, have seen, the defendant is not liable. But taking the plaintiff's testimony, with all the legitimate inferences and deductions which can be drawn from it, the jury could find that the place at which the injury occurred was not obviously dangerous to the plaintiff, and that he was not lacking in ordinary care. He was engaged in clipping cable and sliding along above the same electric-light wire for more than a day. During this time the place was safe for one exercising ordinary care for his own protection. It is true, the dangerous wire was there, and it was charged with a voltage of electricity of sufficient volume to severely injure or perhaps kill him if he came in contact with it; but it was far enough below his feet to enable him to pursue his work with safety in the ordinary way, lifting his weight with his hands and sliding the swing along the cable. He says, however, that the distance between the electric-light wire and the cable was gradually lessened. When he began work he found the wire located a sufficient distance below his feet to enable him to proceed with safety. He had a right to assume that it would be maintained at this safe distance. Unless it was obvious to him, while he was exercising the care of a prudent man, that this safe distance was being gradually shortened until it became unsafe, he ought not to be charged with the consequences of the defendant's negligence in permitting the highly charged wire to be kept in such close proximity to the cable as to render the place where he was at work unsafe and dangerous. It is fairly inferable, from the testimony, that he did not know that the distance was being gradually shortened, and this resulted so gradually and imperceptibly that the jury could well find that ordinary care did not impose upon him the duty of constant inspection and examination to ascertain

whether the place which had been safe for a day had suddenly become unsafe and dangerous. It is true, if he had not extended his foot, he would not have been injured, but, from his explanation of the occurrence, his act in lowering his foot was usual and natural, and one which could be anticipated by the master when he was put to work. Questions of negligence and diligence are peculiarly for the jury, and it is enough for a reviewing court that there was some evidence to authorize their finding. The master waived the rule requiring employees to wear rubber gloves and rubber coats, by knowingly permitting work to be performed without them. The plaintiff was not an inspector and did not assume the risk of injury, as in *Redding* v. *Telephone Co.,* 6 *Ga. App.* 831 (65 S. E. 1068).

2. The verdict is not only not excessive, but seems to be moderate compensation for the injuries which the plaintiff describes. The only measure of damages for pain and suffering is the enlightened conscience of an impartial jury, and it is only in extreme cases that the reviewing court will hold, as a matter of law, that the amount of compensation fixed by the jury for personal injuries is excessive.

3. It is contended that as the evidence failed to disclose what the plaintiff's earning capacity was at the time of the injury, it was error to instruct the jury upon the use of the mortality tables and upon the theory that the plaintiff could recover for decreased earning capacity. The plaintiff testified that his earning capacity had been decreased one-half. There was no evidence as to what he was earning. The petition alleged that at the time he was injured, he was receiving $1.50 per day. The defendant answered that it "neither admits nor denies" this allegation. The code requires all the material allegations in a petition to be admitted or denied, unless the defendant can not from want of sufficient information do either. Civil Code (1910), § 5539. In order, therefore, to avoid a categorical answer to a material averment, the defendant must state that he can not so answer because he does not know. Merely to say that he neither admits nor denies is no answer at all. Here the defendant does not even say that it *can not* admit or deny. Its answer is merely that "it neither admits nor denies." Such an answer must be taken as an admission. Besides, if the defendant had said it did not know, its answer would have been

evasive. It was bound to know what rate of compensation the plaintiff was receiving. Civil Code, § 5637; *Raleigh & Gaston R. Co.* v. *Pullman Co.,* 122 *Ga.* 700 (50 S. E. 1008). None of the instructions upon the subject of recovery for decrease in earning capacity were so inaccurate as to demand a new trial. The instructions in reference to the use of the mortality tables were not erroneous because the judge failed in that connection to refer to the possibility of increased earning capacity. The charge as given was correct, and if further instructions in relation to the subject were desired, they should have been requested. Nor did the judge intimate an opinion that the plaintiff had sustained an annual loss in earning capacity of $500, in naming this sum to illustrate how the tables might be used.

4. The court charged: "If, under the evidence, the expectancy would be more or less than that of the average man, or the earning capacity could increase or decrease, the cash or present value would vary accordingly." Error is assigned upon this charge upon the ground that the jury should have been instructed that the probability of the plaintiff's condition being improved, and of his entirely recovering, should be taken into account by the jury. This idea was, in the absence of a request for more specific instructions, sufficiently expressed in the charge as given by the words "increase or decrease."

5. There was no error in the following charge: "The master, under the law, is under the special duty to inspect and investigate the risks to which the servant is exposed." This was merely a plain, simple statement of the master's absolute duty of inspection in order to see that the servant has a safe place in which to work.

6. The court charged the jury that in passing upon the credibility of the witnesses and determining where the preponderance of evidence lies, they were authorized to consider various things, and omitted to enumerate the interest or want of interest of the witnesses. This omission of the trial judge was doubtless inadvertent. At any rate, the inaccuracy is not of sufficient materiality to require another trial. It was as much error against one party as the other, and any intelligent jury would know, as a matter of common experience, and take into account in reaching their verdict, the fact that human testimony is often colored by the interest of the witnesses. Had they been instructed not to do so, the error

would be harmful, but merely to omit an instruction that they might take the interest of the witness into account would, ordinarily, not require a new trial.

7. Error is assigned upon the following charge: "You are not concerned in any way with the result of your verdict, so long as you know and believe, as upright jurors, that verdict speaks the truth of the case, based upon the opinion you entertain of the evidence adduced upon the trial, under the rules of law as given you in charge by the court." It is complained that the charge was inaccurate, since the jury were concerned with the result of the verdict, to wit, the amount of damages, and because the charge tended to relieve them of responsibility and convey the impression that the verdict was subject to unlimited review by the courts. We do not think the instruction is subject to the criticisms made upon it. The word "result" was used in the sense of "consequences," and, so construed, was merely an admonition to the jury to be governed by the law and the evidence, and not by the situation or condition of the parties, or other improper considerations. In a case of this character the charge, if it had any effect at all, was favorable to the defendant.     *Judgment affirmed.*

### ON REHEARING.

The court, on motion of counsel for the plaintiff in error, granted a rehearing, the motion being based upon the ground that in announcing the ruling set forth in the third headnote and the third division of the opinion, the court had overlooked a material part of the record. In the original argument before this court and in the original brief of counsel for the plaintiff in error, its contention in reference to this point was based solely upon the ground that, in the absence of special demurrer, the original answer of the defendant was sufficient. In the argument upon the rehearing, attention was called to the fact that the answer of the defendant had been amended. Paragraph 19 of the petition was as follows: "That on account of said injuries your petitioner has lost over two months from his work, and at the time he was injured he was earning $1.50 per day." This paragraph was amended by adding an averment that at the time of the injury the plaintiff was married, and, while not 21 years of age, he had been manumitted by his parents. Thereupon the defendant filed an amendment to its answer as follows: "It denies each and all the allegations contained

in each and all of the paragraphs of the amendment and of the petition as amended." It is insisted by counsel for the plaintiff in error that this amended answer put in issue the question as to the amount which the plaintiff was earning at the time he was injured, and that inasmuch as there was no evidence to show what sum he was earning, it was error for the court to charge the jury upon the use of the mortality tables, and upon the theory that the plaintiff could recover for decreased earning capacity. Having in effect admitted in the original answer the allegation in the original petition, that the plaintiff was earning $1.50 per day, it might with much force be contended that the effect of the amended answer was simply to deny so much of paragraph 19 of the petition, as amended, as was not embraced in that paragraph of the original petition. The plaintiff having specifically alleged that he was earning $1.50 per day, and the defendant having declined either to admit or to deny this allegation in reference to a matter as to which it must have had knowledge, it would seem that the answer to the amendment, which merely in general terms denied each and every paragraph in the petition as amended, ought not to be treated as a denial of the specific allegation that the plaintiff was earning $1.50 per day. Good faith on the part of the defendant required that the plaintiff be specifically put on notice that the defendant, although his employer, declined to admit the truth of the express averment that the plaintiff was earning $1.50 per day.

But without reference to this, we have, on further reflection, reached the conclusion that the evidence was sufficient to authorize the instructions complained of. On this subject the plaintiff testified: "I was clipping the cable as a lineman at the time I was injured. I was not getting the pay of a lineman. Their pay was $2.75 and $2.80 per day." Montgomery, one of the witnesses in the case, testified as follows: "The plaintiff had been a helper for most of the time, but he had learned to climb as a lineman. The plaintiff was getting twenty-five cents a day more than a regular helper." While there was nothing, in the evidence, to show what was the pay of a helper, so as to fix with certainty the wages of the plaintiff, it does appear that a helper was receiving some compensation, and that the plaintiff's wages were twenty-five cents per day in excess of a helper's pay. So that there is affirmative

proof that the plaintiff was receiving some compensation. He was paid something more than twenty-five cents per day. The important question in the case was, not so much what the plaintiff was actually earning at the time he was injured, but what his earning capacity was. The amount that he was earning at the time was certainly not the exclusive test of his earning capacity. A person may have earning capacity, and yet be temporarily out of employment. There was abundant evidence to justify the conclusion presumably reached by the jury, that the plaintiff had earning capacity, and that this earning capacity had been diminished in consequence of the injury of the defendant. The wide range of discretion allowed juries in fixing damages for pain and suffering is such that this court can not say that the verdict for $3,500 in favor of the plaintiff was so large as to require the inference that it included too large a sum, under the evidence, for decreased earning capacity. The verdict was moderate in amount, and would not have been excessive, even if based upon pain and suffering alone. For the reasons above stated, we adhere to the judgment first rendered.