180

A11A1454. GREAT WEST CASUALTY COMPANY et al.
v. BLOOMFIELD et al.
(721 SE2d 173)

BARNES, Presiding Judge.

Following a defense verdict, the trial court denied a defendant's motion for more than $69,000 in attorney fees under Georgia's "offer of settlement" statute, OCGA § 9-11-68, in this wrongful death action against two tractor-trailer truck drivers, their employers, and their insurers. The trial court found that the defendant was not entitled to attorney fees because its initial offer to settle for $25,000 was not made in good faith. The defendant appeals, arguing that the trial court erred in denying its motion made after the jury returned a verdict against only the other truck driver. Because the trial court did not abuse its discretion in finding that the settlement offer was not made in good faith and declining to award attorney fees to the defendant, we affirm.

This is the second appearance of this case before this Court. As recited in *Great West Cas. Co. v. Bloomfield*, 303 Ga. App. 26 (693 SE2d 99) (2010), the underlying procedural posture of the case on the first appeal was as follows:

> On June 23, 2006, Nola Rowe Bloomfield was fatally injured in a vehicular accident. Her husband, Gerald Bloomfield, and her estate, through its administrator Roger Kirschen-baum (collectively, "Bloomfield"), brought an action alleging that the accident was caused by the actions of two separate truck drivers and naming as defendants the drivers, the companies that owned the drivers' trucks, and those companies' liability insurers. On June 12, 2007, one of the drivers, his trucking company, and that company's insurer, Great West Casualty Company (collectively, "Great West"), made an offer of settlement pursuant to OCGA § 9-11-68. Bloomfield rejected the offer in writing on July 16, 2007. A jury subsequently returned a verdict of no liability as to Great West, and the court entered a judgment on that verdict. Great West then requested attorney fees and expenses of litigation pursuant to OCGA § 9-11-68.

The trial court initially denied the attorney fee request without explanation, but this Court vacated the order and remanded the case for the trial court to set forth the basis for its ruling, as required by OCGA § 9-11-68 (d) (2). *Great West Cas. Co.*, 303 Ga. App. at 30 (3).

On remand, the trial court made specific findings of fact to support its determination that Great West's initial $25,000 settlement offer was not made in good faith, and thus that Great West was

not entitled to attorney fees under OCGA § 9-11-68. The trial court found that the initial settlement offer of $25,000 "was not a reasonable offer or a realistic assessment of liability in a wrongful death case," that Great West's driver paid the traffic ticket fine, and that Great West never deposed or even interviewed the first police officer on the scene who testified at trial for the plaintiff. It also found that, absent evidence that Great West obtained "new discovery or factual evidence," its offer during trial to settle for the policy limits of $1 million "showed the bad faith intent of the defendant's initial offer."

The offer of settlement statute provides that either party may serve upon the other party a written demand or offer to settle a tort claim for a specified amount of money. OCGA § 9-11-68 (a). "Moreover, if either party's settlement demand or offer is rejected, that party may be entitled to recover attorney[ ] fees" if the final judgment varies sufficiently from the offer or demand.[1] *Smith v. Baptiste*, 287 Ga. 23, 24 (1) (694 SE2d 83) (2010).

If a party is entitled to recover attorney fees and expenses of litigation because the judgment meets the requirements of OCGA § 9-11-68 (b), "the court may determine that [a settlement] offer was not made in good faith in an order setting forth the basis for such a determination. In such case, the court may disallow an award of attorney[ ] fees and costs." OCGA § 9-11-68 (d). We review for abuse of discretion the trial court's decision on whether a settlement offer was made in good or bad faith. *Cohen v. Alfred and Adele Davis Academy*, 310 Ga. App. 761, 763 (1) (714 SE2d 350) (2011) (affirming trial court's finding that settlement offer was made in good faith and granting motion for fees).

Great West argues that the trial court erred in denying its motion for fees and costs because its $25,000 settlement offer was made in good faith (1) as a matter of law, as determined by the jury verdict in its favor, and (2) because it had a reasonable basis for making the offer.

1. First, the defense verdict alone is not sufficient under the statute to determine that Great West's initial offer was made in good faith. If it were, the statute would simply stop after providing in OCGA § 9-11-68 (d) (1) that the trial court "shall" award fees if the judgment meets the numerical requirements of OCGA § 9-11-68 (b). But instead, if the judgment meets that requirement, the trial court then has the discretion under OCGA § 9-11-68 (d) (2) to determine

---

[1] Specifically, OCGA § 9-11-68 (b) provides that if the plaintiff receives 75 percent or less of the defendant's rejected settlement offer, the defendant may seek attorney fees, and if the plaintiff receives 125 percent or more of the plaintiff's rejected settlement demand, the plaintiff may seek attorney fees.

whether or not the offer was made in good faith and whether to disallow the fee award. Thus, while the defense verdict is relevant to the issue of good faith, it is not conclusive evidence that Great West acted in good faith.[2] Instead, that determination is left to the trial court's discretion under OCGA § 9-11-68 (d) (2), and the defense verdict alone is insufficient to establish the good faith of the $25,000 settlement offer as a matter of law.

2. Great West also argues that it had a reasonable basis for offering to settle the wrongful death claim against it for $25,000, based on the underlying facts of the case as proven by the verdict, and that the offer was accordingly made in good faith. To explain its offer, Great West notes that this accident was in reality two collisions, and that Nora Bloomfield's death was due entirely to the negligence of the second driver who caused the second wreck. Great West's driver clipped another car while changing lanes, causing that first car to wreck. The car in which Nora Bloomfield was a passenger slowed while approaching the first wreck and was rear-ended by the second driver, against whom the jury ultimately assessed 100 percent liability.

When Bloomfield rejected Great West's offer to settle and release all claims against it for $25,000, he noted that the offer could not be construed in good faith because "no one disputes the damages grossly exceed the value of [the] offer." The jury apparently agreed that the damages grossly exceeded the value of the offer, awarding $10.42 million in damages and $44 million in punitive damages against Great West's co-defendant.[3] While Great West now asserts that it offered a nominal amount in settlement because it never thought its insured was responsible in any way for the fatal collision, without that first collision, there would not have been a second one. Moreover, a sufficient possibility remained that the jury might return a large verdict against both truckers to induce Great West to offer a $1 million settlement during the trial, and while Great West argues that it was simply responding to the events as they unfolded during trial, its second offer was a factor that the trial court properly considered in reviewing Great West's motion for attorney fees and costs.

---

[2] Great West relies on dicta in a concurring opinion in *Smith*, 287 Ga. at 38 (4) (Nahmias, J., concurring), to argue that the defense verdict in this case establishes its good faith as a matter of law. The concurring justice discussed the plaintiffs' failure to raise a constitutional challenge to OCGA § 9-11-68 before the trial court entered summary judgment against them and noted in a parenthetical aside, "That final judgment, by the way, determines as a matter of fact and law that the value of appellees' claims was zero, so that appellants' settlement offer of $5,000 was reasonable."

[3] The trial court reduced the punitive damages award to the statutory cap of $250,000, per OCGA § 51-12-5.1 (g).

Just as the jury determines the reasonableness of an insurer's response to a request to settle within policy limits, see *Cotton States Mut. Ins. Co. v. Brightman*, 276 Ga. 683, 686-687 (1) (580 SE2d 519) (2003), the trial court determines the reasonableness of an insurer's offer to settle. It is a factual determination, based on the trial court's assessment of the case, the parties, the lawyers, and all of the other factors that go into such a determination, which the trial court has gathered during the progress of the case.

In explaining that appellate courts defer to trial courts' rulings on the admissibility of evidence, our Supreme Court has stated, "This is so because trial courts, unlike appellate courts, are familiar with a piece of litigation from its inception, hear first-hand the arguments of counsel, and consider disputed evidence within the context of an entire proceeding." *Cooper Tire &c. Co. v. Crosby*, 273 Ga. 454, 456-457 (2) (543 SE2d 21) (2001). Further, "[o]n appeal, this court must not substitute its judgment for that exercised by the trial court when there is some support for the trial court's conclusion." *Jennings Enterprises v. Carte*, 224 Ga. App. 538, 541 (5) (481 SE2d 541) (1997) (affirming trial court's decision not to award attorney fees under OCGA § 13-6-11).

Similarly, a trial court's consideration of an offer of settlement is made within the context of an entire proceeding. In this case, while it is possible to quarrel with each element of the trial court's reasons for declining to award attorney fees to Great West, this Court cannot conclude that the trial court abused its discretion in deciding not to award attorney fees to Great West.

*Judgment affirmed. Miller, P. J., Phipps, P. J., Ellington and Doyle, JJ., concur. Adams and Blackwell, JJ., dissent.*

ADAMS, Judge, dissenting.

I must respectfully dissent. Although this Court generally owes great deference to a trial court's ruling under the abuse of discretion standard, in this case I believe that the trial court abused that discretion, and I would reverse.

The first time this case was on appeal, this Court held that because the trial court had denied Great West's request for attorney fees, "the court must set forth in its order the basis for finding that the offer was not a good faith offer." (Footnote omitted.) *Great West Cas. Co. v. Bloomfield*, 303 Ga. App. 26, 30 (3) (693 SE2d 99) (2010). This Court based this holding on the fact that the statute explicitly requires the trial court to give the basis for its denial of attorney fees. OCGA § 9-11-68 (d) (2). Accordingly, this Court remanded the case to the trial court, the parties fully briefed the issues and the trial court held a hearing before issuing its order listing the reasons for denying Great West's request for attorney fees. Yet, the majority completely

ignores the trial court's findings and affirms based upon the standard of review. Deference to the trial court's discretion does not require that this Court accept its decisions even if the findings supporting those decisions are without merit. Because I find that the reasons provided by the trial court do not support its determination, I believe that the trial court abused its discretion.

As indicated in the majority opinion, this case actually involves two collisions: Great West's driver's truck first collided with a car driven by nonparty Marco Roero-Zaragoza (the "First Collision"). According to police reports, the second accident occurred "moments" later when Maril Buress, driving a truck for Performance Food Group of Georgia, Inc. ("PFG"), rear-ended the car in which Nora Bloomfield was a passenger (the "Second Collision").

Great West made its $25,000 offer on June 12, 2007, six months after Bloomfield filed the complaint and approximately one year after the collisions occurred. Although the offer was made before the parties began taking depositions, Great West's attorney filed an affidavit stating that her firm had been involved in the case within days of the collisions and by the time she tendered the offer on behalf of Great West, she had filed an answer denying liability, sent and responded to discovery, met with a consulting accident reconstruction expert, interviewed Great West's driver, James Young, and "otherwise investigated" the two collisions. Great West asserts that the $25,000 offer was based upon a reasonable assessment placing their potential liability in the case at 0% under the principle of proximate intervening cause. See, e.g., *Little Rapids Corp. v. McCamy*, 218 Ga. App. 111, 114-115 (2) (460 SE2d 800) (1995) ("It is well settled that there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent, intervening, act of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant's act, and which was sufficient of itself to cause the injury.") (citations and punctuation omitted).

The trial court concluded, however, that Great West's offer was not made in good faith based upon the following factors:

(1) [Great West's driver], James Young, elected to pay the traffic ticket fine, which in the State of Georgia is an admission of guilt pursuant to OCGA § 40-13-58; (2) [Great West] failed to depose and[/]or interview the investigating officer who was a key witness at trial prior to the actual trial; [and] (3) . . . the [trial court] was not presented with evidence that the defendants conducted or obtained any new discovery or factual evidence between the time the initial offer was made and when the subsequent offer [in the

amount of the $1 million policy limits] was made that justified the increase in the offer further indicating a showing of bad faith.

These factors do not support the trial court's determination.

*Payment of the Fine* — The record indicates that Young was charged with improper lane change in connection with the First Collision and that he subsequently paid the fine for that traffic violation. But "payment of a traffic fine is not, by itself, an admission of guilt." (Footnote omitted.) *Eubanks v. Waldron*, 263 Ga. App. 75 (587 SE2d 253) (2003). See also *Hite v. Anderson*, 284 Ga. App. 156, 157-158 (643 SE2d 550) (2007) (paying a fine after pleading not guilty to traffic violation is not a voluntary admission of guilt); *Waszczak v. City of Warner Robins*, 221 Ga. App. 528, 529-530 (1) (471 SE2d 572) (1996) (the fact that, after pleading not guilty to failure to yield, defendant chose to pay a fine rather than appear in court did not constitute a voluntary admission of guilt). The statute cited by the trial court, OCGA § 40-13-58, provides that "[w]here a defendant cited for a traffic violation posts a cash bond . . . and fails to appear in court . . . on the day set in the original citation[,] . . . such failure shall be construed as an admission of guilt and the cash bond may be forfeited." Such an admission "constitutes a prima facie showing of negligence and is conclusive if not rebutted." (Footnote omitted.) *Eubanks v. Waldron*, 263 Ga. App. at 75. But Bloomfield has not pointed to any evidence that Young forfeited a bond,[4] and thus it is unclear whether OCGA § 40-13-58 even applies.

Regardless of whether the statute applies or whether Young otherwise pled guilty to the traffic violation, however, he clearly admitted at trial that he made an improper lane change and that his actions resulted in the First Collision. But Young's admissions in connection with the First Collision, whether made by operation of law, by plea or in court, were not determinative of Great West's liability in this case. In fact, Great West consistently denied that Young's actions proximately caused the Second Collision that resulted in Nora Bloomfield's death. Accordingly, Young's payment of his fine was in no way inconsistent with Great West's determination that Bloomfield's claims had a $0 value or with a defense of intervening proximate cause. Thus, the trial court erred in concluding that Young's payment of the fine in connection with the First Collision supported a finding that Great West lacked good faith in

---

[4] Young's deposition is not a part of the appellate record, and although the traffic citation was admitted as an exhibit at trial, the trial exhibits were not included in the record on appeal. A review of the record did not reveal a copy of the ticket and the parties have not pointed us to any such copy.

making the $25,000 offer in connection with any alleged liability in the Second Collision.

*Witness Interview* — The trial court also noted that prior to trial, Great West did not depose or otherwise interview Gwinnett Police Officer Lenay Shemp, who investigated the First Collision and who the trial court described as a "key witness." Shemp prepared the accident report on the First Collision, in which she stated that the First Collision occurred three minutes before the time listed on the accident report for the Second Collision. She testified at trial that she arrived on the scene just after the Second Collision occurred, and observed the condition of the affected passengers, including Nora Bloomfield, who was pinned in the car and who, tragically, appeared to suffer "a great deal of pain" as she was trapped in the car for "quite some time." Shemp also testified that the two collisions must have happened "almost instantaneously" and that the Second Collision would not have happened but for the First Collision. On cross-examination, when asked why she had set the time of the First Collision on her accident report at three minutes prior to the Second Collision, she stated that she estimated that time based upon the time of her arrival on the scene, which was after the Second Collision occurred. She also conceded that she only saw the vehicles involved after the two collisions occurred and that she did not know their positions before the second impact because she did not investigate the Second Collision.

Although the trial court, with the benefit of hindsight, faults Great West for not interviewing Shemp before trial, that decision does not reflect upon Great West's decision to make the $25,000 offer approximately one year earlier. Nothing in OCGA § 9-11-68 requires that a party complete discovery before making an offer of settlement. Viewing the situation at the time of the offer, Great West had access to Shemp's accident report, which appeared consistent with Young's version of the timing between the two accidents. Young estimated at trial that the Second Collision occurred approximately five minutes after the First Collision because he had time to walk back up a hill to check on the people inside the Roero-Zaragoza car and to call his employer to report the accident. Moreover, Shemp admittedly did not investigate the Second Collision — another officer prepared the report on that accident; therefore, Great West could not have anticipated that she would proffer an opinion as to how the Second Collision occurred. Nor could they have anticipated that her testimony would contradict her accident report. Thus, Great West reasonably could have believed that no further investigation of Shemp was required before making the initial offer.

Although the trial judge apparently disapproved of Great West's trial preparation, the failure to interview Shemp does not equate

with a lack of good faith. Even if Great West had known Shemp's testimony prior to trial, it would not have compelled a conclusion that its initial assessment of the case was in error. Even though Shemp testified as to the timing of the accidents, she had no direct evidence of when the First Collision occurred because she arrived only after the Second Collision. And although her testimony regarding Nora Bloomfield's pain and suffering was undoubtedly moving, Great West disclaimed any liability for those damages. Indeed, the jury heard Shemp's evidence and still determined that Great West had no liability.

*Lack of New Discovery* — The trial court also based its decision on Great West's failure to cite any new discovery after the first offer that would have justified the $1 million offer at trial. But it is apparent that Great West's offer was a result of the unfolding evidence at trial, something that the discovery process cannot always predict. It would be reasonable for Great West to have assumed that Shemp's testimony about Nora Bloomfield's pain and suffering as she struggled to get out of the car could have a profound effect on the jury. Thus, it would have been reasonable for Great West to anticipate that if the jurors found liability, their damage award could be quite large. Such an assumption is borne out by the jury's verdict awarding $10.42 million in compensatory damages and $44 million in punitive damages against the PFG defendants, who admitted liability for the Second Collision.[5]

Such a concern is not inherently inconsistent with a good faith belief by Great West that it was not liable for such damages. As any litigator knows, no guarantee exists that a jury will follow the law urged upon them, especially when a plaintiff appears to be deserving of a recovery. Under such circumstances, it would not be unreasonable for an attorney to recommend making an offer of up to an insurance policy's limits in an effort to cap any potential downside. Such a decision in the heat of battle does not mean that the prior offer was unreasonable or not made in good faith. A litigant's perspective one year before trial can be quite different from his or her perspective when facing an imminent jury verdict. Moreover, even with the $1 million offer behind the scenes, Great West maintained its defense that it was not liable for Nora Bloomfield's death throughout the litigation until the end of the trial. In fact, Great West called Young as its only witness at trial and presented no evidence on damages. Under these circumstances, Great West was not required to present evidence of new discovery to justify its second

---

[5] The trial court reduced the punitive damage award to the statutory cap of $250,000. OCGA § 51-12-5.1 (g).

offer. Even if the trial judge or another attorney may have pursued a different litigation strategy, the record does not support a finding that Great West's strategy was unreasonable, as demonstrated by the jury's verdict. Accordingly, the trial court erred in finding that the $1 million trial offer meant that the $25,000 initial offer was not made in good faith.[6]

And although Great West's initial offer was far less than the damages claimed, damages were only one element of Bloomfield's case. Bloomfield first had to prove that Great West was liable for damages. Thus, the trial court and the majority's focus on damages is misplaced. Great West believed, and the jury agreed, that it had no liability. While it may have been a somewhat risky strategy on Great West's part to make a relatively low offer based upon its analysis of the case, it was no more risky than Bloomfield's decision to turn down the $1 million offer at trial. But nothing in either decision alone reflects a lack of good faith. Accordingly, I would reverse the trial court's order denying Great West's motion for attorney fees.

I am authorized to state that Judge Blackwell joins in this dissent.

DECIDED DECEMBER 1, 2011 — ▮▮▮▮▮▮▮▮▮▮

*Dennis, Corry, Porter & Smith, Stephanie C. Patel*, for appellants.

*Law & Moran, Peter A. Law, Ernest M. Moran, Kelly A. Christian, Roseman & Citron, Barry L. Roseman, Mickiel D. Pete, Audrey M. Tolson*, for appellees.

---

[6] Bloomfield argues that Great West's counsel admitted that the initial offer was not made in good faith based on a conversation in which Bloomfield's representatives allege that the attorney stated that she did not know anything about the case at the time she made the offer. Great West's counsel denies that she made any such statement. The trial judge made no findings of fact on this issue and, in fact, indicated at the motion hearing that she would not make such a factual determination. Rather she stated that she would "take . . . both [counsel] at your word." Certainly the trial judge did not cite any such alleged discussion as a basis for disallowing the attorney fee award. Accordingly, this Court need not address this argument on appeal. See generally *Perdue v. O'Kelley*, 280 Ga. 732, 733 (632 SE2d 110) (2006) (appellate courts are courts for the correction of errors of law made by the trial courts, and an error of law has as its basis a specific ruling made by the trial court). Additionally, Bloomfield continues to argue that Great West withdrew its offer of judgment at trial and thus cannot rely upon it to seek attorney fees. But this Court has already decided that issue against Bloomfield in its earlier opinion, and the parties are bound by that determination. *Great West Cas. Co. v. Bloomfield*, 303 Ga. App. at 29 (2). This Court determined that the offer was not withdrawn; rather, Bloomfield rejected it. Id.