**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 19, 2015**

# In the Court of Appeals of Georgia

A14A2279, A14A2280. CHADWICK et al. v. BRAZELL; and vice
versa.

BOGGS, Judge.

A jury awarded Lisa M. Brazell $125,000 on her medical malpractice claim
against Brian S. Chadwick, M. D., and Haven Gynecology, P.C., d/b/a Haven Medical
Spa & Cosmetic Surgery (hereinafter "Chadwick"). In Case No. A14A2279,
Chadwick appeals, asserting that the trial court erred in failing to grant his motion in
limine to exclude mention of Brazell's punitive damages claim and by failing to grant
his motion for attorney fees pursuant to OCGA § 9-11-68. In Case No. A14A2280,
Brazell appeals, asserting that the trial court erred in allowing Chadwick to testify as
an expert witness, and in refusing to award her attorney fees pursuant to OCGA § 9-
15-14. She also asserts that the court erred in failing to order a new trial in light of

what she alleges was Chadwick's impermissible expert testimony and because the jury's verdict was against the weight of the evidence. For the following reasons, we affirm in both cases.

In her complaint,[1] Brazell alleged that Chadwick negligently: performed her breast implant surgery and did not have the proper education, training and skills to do so; failed to obtain consultation and referral for performance of the procedure and for management of postoperative complications; failed to disclose to her the material risks of the surgery and failed to obtain her informed consent for the procedure; failed to recognize and properly treat her non-healing surgical wound when the implant began to protrude though her skin; re-sutured the non-healing skin instead of promptly removing the implant and placing a drain; prematurely reinserted the implant a month later and attempted to improperly use the implant as a tissue expander; and failed to allow eight weeks to three months for healing before placement of a tissue expander or another implant. After suffering further complications, Brazell sought the help of another physician who removed the implant.

---

[1]The parties requested that only excepts from the trial be included in the record on appeal: an excerpt of the motion in limine filed by Chadwick, an excerpt of post trial motions, an excerpt of Chadwick's trial testimony, and an excerpt of his defense counsel's closing argument.

Brazell alleged that she "suffered loss of tissue and asymmetry and would require at least two reconstructive procedures, including placement of a breast implant into the left breast at a future time."

Brazell sued Chadwick for medical malpractice and sought compensatory and punitive damages. Following a five-day trial, a jury awarded Brazell $125,000 in "total damages." The trial court entered a judgment on the verdict, and the parties now appeal.

*Case No. A14A2279*

1. Chadwick argues that the trial court erred in failing to grant his motion in limine to preclude Brazell from making any mention of her request for punitive damages. However the record contains only an excerpt of a motion hearing during the trial that reveals Brazell withdrew her claim for punitive damages following the close of all evidence. Chadwick can show neither error nor harm in the absence of a transcript of the trial showing that punitive damages were mentioned during the trial. See *Gaddis v. Skelton*, 226 Ga. App. 325, 326 (486 SE2d 630) (1997). It was Chadwick's obligation as the appellant to show error in the record, and he has failed to do so here. See id.

3

2. Chadwick contends that the trial court erred in denying his motion for attorney fees pursuant to OCGA § 9-11-68. OCGA § 9-11-68 (b) (1) provides that:

> If a defendant makes an offer of settlement which is rejected by the plaintiff, the defendant shall be entitled to recover reasonable attorney's fees and expenses of litigation incurred by the defendant or on the defendant's behalf from the date of the rejection of the offer of settlement through the entry of judgment if the final judgment is one of no liability or the final judgment obtained by the plaintiff is less than 75 percent of such offer of settlement.

The offer *must*:

> (1) Be in writing and state that it is being made pursuant to this Code section;
>
> (2) Identify the party or parties making the proposal and the party or parties to whom the proposal is being made;
>
> (3) Identify generally the claim or claims the proposal is attempting to resolve;
>
> (4) State with particularity any relevant conditions;
>
> (5) State the total amount of the proposal;

*(6) State with particularity the amount proposed to settle a claim for punitive damages, if any;*

(7) State whether the proposal includes attorney's fees or other expenses and whether attorney's fees or other expenses are part of the legal claim; and

(8) Include a certificate of service and be served by certified mail or statutory overnight delivery in the form required by Code Section 9-11-5.

OCGA § 9-11-68 (a). (Emphasis supplied.) "We owe no deference to a trial court's ruling on questions of law and review such issues de novo under the 'plain legal error' standard of review." (Citation and punctuation omitted.) *L. P. Gas Indus. Equip. Co. v. Burch*, 306 Ga. App. 156, 157 n.3 (701 SE2d 602) (2010), overruled on other grounds, *Crane Composites, Inc. v. Wayne Farms, LLC*, 296 Ga. 271 (765 SE2d 921) (2014).

The record reveals that Chadwick made an offer of settlement in the amount of $200,000, and that Brazell rejected the offer. The jury returned a verdict in favor of Brazell in the amount of $125,000, which was less than 75 percent of Chadwick's offer. The trial court, in denying Chadwick's motion for attorney fees and expenses pursuant to OCGA § 9-11-68, found that Chadwick failed to "satisfy each of the eight

5

requirements in order to trigger its application." Specifically, the trial court found that Chadwick failed to "state with particularity the amount proposed to settle a claim for punitive damages."

Chadwick argues, on the same grounds asserted in his first enumeration, that there was no punitive damages claim pending at the time he made his offer. But the record shows that punitive damages was listed as an issue to be tried in the pretrial order and in the complaint.

Chadwick argues further that even if a punitive damages claim was technically pending, requiring him to state that he was "allocat[ing] zero dollars" to settle such a claim would be a "meaningless statement" and "nonsensical." He asserts that the phrase "if any" in OCGA § 9-11-68 (a) (6) modifies "amount," and he is therefore "free to choose not to allocate an amount to settle the punitive damages claim."

> It is, of course, fundamental that the cardinal rule to guide the construction of laws is, first, to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose. Although the legislative intent prevails over the literal import of words[,] where a constitutional provision or statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms. In other words the language being plain, and not leading to

6

absurd or wholly impracticable consequences, it is the sole evidence of
the ultimate legislative intent.

(Citations and punctuation omitted.) *Van Dyck v. Van Dyck*, 262 Ga. 720, 721 (425

SE2d 853) (1993). In order to dismiss a tort claim pursuant to an offer of settlement,

the offer *must* contain certain elements. See *Thompson v. Watson*, 186 Ga. 396, 405-

406 (197 SE 774) (1938) ("it has always been a rule of construction of statutes that

those in derogation of the common law, that is those which give rights not had under

the common law, and those penal in nature must be limited strictly to the meaning of

the language employed"); cf. *Great West Cas. Co. v. Bloomfield*, 303 Ga. App. 26,

27-28 (1) (693 SE2d 99) (2010); *Driscoll v. Board of Regents &c.*, 326 Ga. App. 315,

316-318 (757 SE2d 138) (2014) (ante litem notice of claim must contain enumerated

statutory elements). Because the legislature chose to include in the list of

requirements for a valid written offer a specific reference to punitive damages,[2] the

---

[2]Several grounds provide support for the legislature's decision to require a written offer of settlement to include punitive damages separately and specifically. Punitive damages are "awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant." See OCGA § 51-12.5.1 (c). Such damages cannot be recovered under uninsured motorist insurance, see *Carter v. Progressive Mountain Ins. Co.*, 295 Ga. 487, 489 (761 SE2d 261) (2014), may be excluded from a general liability insurance policy, see *Ga. Baptist Children's Homes &c. v. Essex Ins. Co.*, 207 Ga. App. 346, 350 (3) (427 SE2d 798) (1993), and are taxable as gross income, see generally *O'Gilvie v. United States*, 519 U. S. 79, 81 (117 SCt 452, 136

phrase "if any" could reasonably be interpreted only as modifying "a claim for punitive damages," which is the antecedent for the modifier. If there is no claim for punitive damages, a party can ignore the requirement of subsection (a) (6). But if there is a claim for punitive damages, the written offer must include the amount proposed to settle that claim *with particularity*. Because Brazell asserted a claim for punitive damages, and such claim was pending at the time the offer was made, Chadwick was required to state *with particularity* the amount proposed to settle that claim, which he failed to do. His offer therefore did not meet the requirements of OCGA § 9-11-68 (a), and the trial court did not err in ruling that he could not recover attorney fees for an offer of settlement pursuant to that Code section.[3]

*Case No. A14A2280*

3. Brazell argues that the trial court erred in denying her motion in limine to prevent Chadwick from testifying "as an expert witness and to provide opinion testimony when [he] could not meet the relevant requirements of [the] Georgia Rules

---

LE2d 454) (1996).

[3]We note that the trial court also has discretion to disallow a fee award pursuant to OCGA § 9-11-68 where a party did not make its offer in good faith. See generally *Great West Cas. v. Bloomfield*, 313 Ga. App. 180, 181-182 (1) (721 SE2d 173) (2011).

of Evidence," OCGA § 24-7-702 (c). OCGA § 24-7-702 (a) provides in part: "The opinion of a witness qualified as an expert under this Code section may be given on the facts as proved by other witnesses." Subsection (b) provides in part: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. . . ." Subsection (c) provides: "Notwithstanding the provisions of subsection (b) of this Code section and any other provision of law which might be construed to the contrary, in professional malpractice actions, the opinions of an expert, who is otherwise qualified as to the acceptable standard of conduct of the professional whose conduct is at issue, shall be admissible only if" the expert meets certain qualifications.

Brazell argues that because Chadwick did not and could not meet the qualifications to testify as an expert, he should not have been allowed to give testimony about whether he met the appropriate standard of care. While we can find no caselaw addressing whether OCGA § 24-7-702 applies to a defendant physician, we hold that it does not.

The following language of OCGA § 24-7-702 (c) suggests that the legislature intended the qualification requirement to apply to a *third-party* expert, not a defendant physician: "the opinions of an expert, who is otherwise qualified as to the acceptable standard of conduct of the professional *whose conduct is at issue*." (Emphasis supplied.) In other words, the qualified third-party expert is expected to testify to the standard of conduct of the professional defendant. As explained in *Parker v. Knight*, 245 Ga. 782, 782 (2) (267 SE2d 222) (1980), it is the *plaintiff* who must produce expert testimony to prevail at trial in a medical malpractice action.

> [T]he professional defendant may defend by asserting that in his treatment of the plaintiff, he complied with the specific standard of care in the profession; and if he does so, giving his own expert opinion or any others, then in order to prevail the plaintiff at the minimum must counter that expert opinion with a contrary expert opinion in her behalf, so as to create an issue of fact for a jury.

*Loving v. Nash*, 182 Ga. App. 253, 255 (1) (355 SE2d 448) (1987).

Brazell argues that *Loving* and *Parker* were decided prior to the tort reform revision in OCGA § 24-7-702, and that the statute now requires all experts to qualify

according to its provisions.[4] But even prior to the effective date of OCGA § 24-7-702 in 2013, and its predecessor OCGA § 24-9-67.1 in 2005, Georgia law allowed the trial court to determine within its sound discretion whether "a witness has such learning and experience in a particular art, science or profession as to entitle him to be deemed prima facie an expert." (Citations and punctuation omitted.) *Redd v. State*, 240 Ga. 753, 755 (2) (243 SE2d 16) (1978). And we find no authority under the law prior to tort reform requiring a defendant physician to meet any qualifications as an expert in order to testify in his own defense.[5]

4. Brazell argues that the trial court erred in denying her motion for new trial in which she asserted that the jury's verdict was "contrary to the evidence and the principles of justice and/or decidedly against the weight of evidence" pursuant to

---

[4] Contrary to Brazell's argument here, those cases do not reflect that the defendant physician had already been qualified as an expert.

[5] We are also doubtful that Brazell would be able to show harm from any error in the admission of Chadwick's testimony concerning the standard of care. In the absence of a full transcript of the trial, we would not be able to determine whether any similar evidence was admitted rendering Chadwick's testimony cumulative. Additionally, even if this court were presented with the full transcript of the trial, we are uncertain as to how Brazell could show harm in the face of a verdict in her favor.

11

OCGA §§ 5-5-20 and 5-5-21.[6] She argues that the verdict of $125,000 was "so inadequate as to be inconsistent with the preponderance of the evidence," see OCGA § 51-12-12 (a), and that the trial court should have granted her a new trial pursuant to OCGA § 51-12-12 (b),[7] or increased the jury's award of damages. She suggested to the court that "a judgment in the range of $400,000 to $600,000 more accurately reflects the true injuries and damages" that she sustained.

An inadequate verdict "is a mistake of fact rather than of law and addresses itself to the discretion of the trial judge who, like the jury, saw the witnesses and heard the testimony. Absent *compelling* evidence, an appellate court will not disturb the presumption of correctness that is created by the trial court's approval of the verdict." (Citations omitted; emphasis in original.) *Anderson v. L & R Smith Inc.*, 265

---

[6]OCGA § 5-5-20 provides: "In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury." And OCGA § 5-5-21 provides: "The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."

[7]This Code section provides: "If the jury's award of damages is clearly so inadequate or so excessive as to any party as to be inconsistent with the preponderance of the evidence, the trial court may order a new trial as to damages only, as to any or all parties, or may condition the grant of such a new trial upon any party's refusal to accept an amount determined by the trial court."

Ga. App. 469, 472 (3) (594 SE2d 688) (2004). The trial court, in denying Brazell's motion for new trial, found that the evidence showed Brazell's past medical expenses amounted to $6,178, her future medical expenses were in the range of $34,000 to $77,000, and that Brazell "did not provide the jury with a numerical guide in her closing argument and rested on the standard for its measure of damages, that being the enlightened conscience of an impartial jury."

To support this claim of error, Brazell cites to the deposition testimony of her experts and defense counsel's closing argument. But we are unable to properly review this claim of error in the absence of the full transcript of the evidence presented at trial from which the jury considered what it deemed to be the appropriate amount of damages.

> In the absence of a trial transcript, there is nothing to review, and we cannot determine if the verdict is [inadequate], because the trial record does not provide a complete record of what transpired in the trial of the case . . . Where all of the evidence is not before the appellate court in a transcript of the evidence, the judgment is assumed to be correct.

(Citations and punctuation omitted.) *Wells Fargo Home Mtg. v. Cook*, 267 Ga. App. 368, 369 (1) (599 SE2d 319) (2004) (question of damages cannot be determined

13

absent a trial transcript from which all evidence may be evaluated in light of the verdict).

5. Brazell argues that the trial court erred in denying her motion for attorney fees and costs pursuant to OCGA § 9-15-14.[8] "We review a trial court's ruling on an OCGA § 9-15-14 (a) motion for attorney fees under the 'any evidence' standard; if any evidence exists to support the trial court's denial of the motion, it must be affirmed." *Kilgore v. Sheetz*, 268 Ga. App. 761, 770 (2) (603 SE2d 24) (2004). And the "denial of attorney fees and costs under OCGA § 9-15-14 (b) is discretionary; therefore, the standard of review is abuse of discretion." *Head v. Head*, 234 Ga. App. 469, 477-478 (4) (507 SE2d 214) (1998).

---

[8]OCGA § 9-15-14 (a) provides in part: "In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position." Subsection (b) provides in part: "The court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under Chapter 11 . . . As used in this Code section, 'lacked substantial justification' means substantially frivolous, substantially groundless, or substantially vexatious."

14

Brazell asserts that because Chadwick contended in the pre-trial order that he acted at all times within the standard of care, but then at trial "admitted for the first time that his actions were below the standard of care," his defense lacked any justiciable issue of law or fact, and she is therefore entitled to attorney fees pursuant to OCGA § 9-15-14 (a), and also entitled to fees pursuant to OCGA § 9-15-14 (b) because part of Chadwick's conduct justified them. In denying her motion, the trial court found that Chadwick's admission that some of his treatment of Brazell fell below the standard of care

> related only to the post-operative care and treatment provided by [Chadwick] . . . [Chadwick] denied that any of his care and treatment of [Brazell] proximately caused [her] injuries. While [Chadwick] admitted in opening statements to certain allegations of negligence related to post-operative care and treatment, the Court finds that such admission did not rise to the level of showing that the defense lacked complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted defense or that the defense lacked substantial justification such that it was substantially frivolous, substantially groundless, or substantially vexatious.

The record before us does not include a full transcript of the trial. Brazell requested only certain portions of the trial transcript in her notice of appeal.

15

Nevertheless, the trial testimony of Chadwick reveals some evidence to support the trial court's denial of fees pursuant to OCGA § 9-15-14 (a). And, we cannot say that the court abused its discretion in denying Brazell an award pursuant to OCGA § 9-15-14 (b) upon finding Chadwick's defense was not substantially frivolous, substantially groundless, or substantially vexatious . While Chadwick testified that he should have removed the breast implant when it became exposed rather than suture the opening, and agreed that re-inserting the implant "was not an appropriate treatment for [Brazell] at [that] point in time" and "fell below the standard of care," he testified further that he met the standard of care in his performance of the original breast augmentation surgery and that "implant extrusion" (the implant protruding from the skin) is a known rare complication that occurs in "less than one percent" of breast augmentation patients.[9] Chadwick explained further that when Brazell contacted him

[9]Pursuant to the pretrial order, the jury was to determine whether Chadwick's performance of the breast augmentation surgery was within the appropriate standard of care; whether he properly advised Brazell of the risks associated with the surgery; whether his post-operative treatment of Brazell, including but not limited to his suturing of the wound once the breast implant was exposed, his removal and reinsertion of the exposed implant and his closure of the wound without a drain, fell within the appropriate standard of care; whether his treatment of Brazell was the proximate cause of her damages; the appropriate amount of damages suffered by Brazell; whether his treatment of her was grossly negligent so at to justify the award of punitive damages, or was willful and malicious; the amount of punitive damages that should be assessed; whether any apportionment should be considered, and, if so,

16

to tell him that a "hole" had "opened up" in her breast on December 23, 2009, she explained that the hole had been there for ten days, and that she did not come and see him upon first discovering it because it was "tough [for her] to get out of work." He also testified that at that time, he instructed her to come to his office the next day on December 24, 2009, but that she did not come to see him until after Christmas and "declined removal of the implant." Chadwick explained that he did not initially think he had violated the standard of care in his post-operative treatment of Brazell and asserted that he did not in his deposition, but that "he changed his mind" after reading the depositions of three other experts, and in retrospect believed that he should have removed the implant instead of suturing the opening.

Because there was evidence to support the trial court's finding that Chadwick's admissions did not rise to the level of showing a *complete* absence of any justiciable issue of law or fact, and that his defense was not substantially frivolous, we must affirm the court's denial of fees pursuant to OCGA § 9-15-14 (a) and (b). See *Kilgore*, supra, 268 Ga. App. at 770 (2); see also *Rescigno v. Vesali*, 306 Ga. App. 610, 615-616 (4) (703 SE2d 65) (2010) (trial court did not abuse its discretion in

to what effect and in what amount.

denying attorney fees where there was some evidence from which jury was authorized to find wrongful eviction but did not).

*Judgments affirmed. Barnes, P. J., and Branch, J., concur*.